UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KIONI M. DOGAN,<br><br>Defendant. | No.  2:16-cr-00198-JAM-1<br>No.  2:16-cr-00199-JAM-1<br><br>**ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE** |

Kioni Dogan, a prisoner serving her sentence at Federal Correctional Institution, Phoenix (FCI Phoenix), filed an emergency motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  Mot. to Reduce Sent. ("Mot."), ECF No. 107. Dogan argues her medical conditions, her children's need for her as a caregiver in light of the Coronavirus Disease (COVID-19) pandemic, and the 18 U.S.C. § 3553(a) sentencing factors warrant a reduction in her sentence to time served.  Mot. at 12–21. Alternatively, Dogan requests the Court allow her to serve the remainder of her sentence in home confinement.  Mot. at 24.  The Government opposes Dogan's request, ECF No. 113; Dogan filed a reply, ECF No. 117.  Having carefully considered the parties' arguments, the Court denies Dogan's motion.

1

I.   BACKGROUND

On March 5, 2019, Dogan pled guilty to a single count of conspiracy to submit false claims, in violation of 18 U.S.C. § 286, and a single count of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349.  See Plea Agreement, ECF No. 82. After calculating Dogan's advisory guideline range and considering the United States Probation Officer's Presentence Investigation Report ("PSR"), the Court imposed a below-guideline sentence: 48 months imprisonment followed by 36 months of supervised release.  See November 19, 2019 Mins., ECF No. 104. Dogan's expected release date is June 3, 2023.  See Kioni M. Dogan, BOP Inmate Data, Ex. 1 to Opp'n, ECF No. 113-1.

Over the past five months, COVID-19 has found its way into and throughout the federal prisons.  As of July 7, 2020, over 7,000 federal inmates across the country have tested positively for COVID-19; 94 have died.  See COVID-19 Coronavirus, FEDERAL BUREAU OF PRISONS, http://www.bop.gov/coronavirus (last accessed July 7, 2020).  CDC research reveals that individuals with serious heart conditions, such as cardiomyopathy, and hypertension are among those at a high risk for contracting COVID-19 and suffering complications.  See Coronavirus Disease 2019 (COVID-19), CENTER FOR DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last accessed July 7, 2020).  Dogan contends that she suffers from both of these health conditions.  Mot. at 4-6 (citing Heart Center of Nevada Medical Records, Ex. C to Mot. at 18, ECF No. 110-1).

## II. OPINION

### A. Legal Standard

Generally, a court may "not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); Dillon v. United States, 560 U.S. 817, 824-25 (2010). However, the First Step Act (FSA) amended 18 U.S.C. § 3582 to grant federal courts sentence-modification authority in specific circumstances. 18 U.S.C. § 3582(c)(1)(A). A district court may modify the term of imprisonment if (1) the modification would not undermine the sentencing factors set forth in Section 3553(a), and (2) "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission defines "extraordinary and compelling reasons" to include reasons related to (a) the medical condition of the defendant, (b) the age of the defendant, (c) certain family circumstances, and (d) other specific reasons. See U.S.S.G. § 1B1.13, Application Note 1. The defendant bears the initial burden of putting forth evidence that establishes an entitlement to a sentence reduction. United States v. Sprague, 135 F.3d 1301, 1306-07 (9th Cir. 1998).

### B. Analysis

#### 1. Exhaustion Requirement

Section 3582(c) imposes an exhaustion requirement upon federal inmates requesting compassionate release. Before requesting sentence modification from a court, a defendant must submit a request for release with the BOP and, then, either: (1) administratively appeal an adverse result or (2) wait for thirty (30) days to pass. Id. Only then may a defendant, or the

1  Director of the BOP, file a motion for modification.  18 U.S.C.
2  § 3582(c)(1)(A).
3      On April 21, 2020, Dogan submitted a request for
4  compassionate release to the FCI Phoenix warden.  Mot. at 12
5  (citing Inmate Request to Staff Member Response, Ex. B to Mot.,
6  ECF No. 107-2).  The warden denied Dogan's request seven days
7  later.  Id.  After filing her April 21 request to the warden,
8  Dogan waited two months before filing this motion.  See ECF No.
9  107.  Dogan has exhausted her administrative remedies.
10           2.   Extraordinary and Compelling Circumstance
11     After a defendant has met the threshold exhaustion
12 requirement, she must demonstrate that "extraordinary and
13 compelling reasons warrant" a reduction.  18 U.S.C.
14 § 3582(c)(1)(A)(i).  The reduction must be "consistent with
15 applicable policy statements issued by the Sentencing
16 Commission."  Id.  Congress has not defined what is
17 "extraordinary and compelling" other than that "[r]ehabilitation
18 of the defendant alone" is insufficient.  28 U.S.C. § 994(t).
19 Instead, it has delegated that responsibility to the Sentencing
20 Commission.  Id.  Before Congress passed the FSA, the Commission
21 concluded "extraordinary and compelling reasons" were limited to
22 four scenarios.  U.S.S.G. § 1B1.13.  These scenarios include:
23 (A) the medical condition of the defendant, (B) the age of the
24 defendant, (C) family circumstances, and (D) a catchall
25 provision for other reasons.  Id.
26     Dogan's arguments seem to fit within some combination of
27 the first and last two scenarios.  She argues her heart disease
28 and hypertension put her at risk of serious illness or death if

4

1  she contracts COVID-19.  Mot. at 16-10.  In addition, because of
2  the pandemic, Dogan's children must remain home and have lost
3  access to their usual childcare.  Mot. at 20-21.  Dogan also
4  requests release in order to better support her children during
5  this period.  Id.

6     A defendant's medical condition may constitute an
7  "extraordinary and compelling reason" if the defendant is
8  suffering from "a serious physical or medical condition," "a
9  serious functional or cognitive impairment," or is "experiencing
10 deteriorating physical or mental health because of the aging
11 process," which "substantially diminishes the ability of the
12 defendant to provide self-care within the environment of a
13 correctional facility and from which he or she is not expected
14 to recover."  See U.S.S.G § 1B1.13(1)(A) & cmt. 1.  Dogan suffers
15 from two comorbidities: cardiomyopathy and hypertension.  Mot.
16 at 4-5.  She was diagnosed with both as recently as March 9,
17 2020, not long after she entered BOP custody.  See Southwest
18 Desert Cardiology Medical Records, Ex. C to Mot. at 12, 14, 17,
19 ECF No. 110-1.

20    FCI Phoenix is a medium security correctional institution
21 with an adjacent minimum security satellite camp and a detention
22 center.  Mot. at 6.  The same BOP staff serve both the
23 correctional institution and the camp.  Id.  Dogan is
24 incarcerated within the satellite camp.  Id.  As of July 16,
25 2020, the number of COVID-19 infections in FCI Phoenix is
26 relatively low: fourteen (14) inmates and nine (9) staff members
27 have tested positive.  See https://www.bop.gov/coronavirus/
28 (last accessed July 16, 2020).  There have been no deaths and

one (1) inmate and five (5) staff members have recovered from COVID-19. Id. However, Maricopa County, Arizona, where FCI Phoenix is located, is reporting significant increases in COVID-19 infections and deaths. To date, infections are at 88,364 and 1,274 have died. See Coronavirus Disease (COVID-19), MARICOPA COUNTY, https://www.maricopa.gov/5460/Coronavirus-Disease-2019 (last accessed July 16, 2020).

Despite the rapid spread of COVID-19 in Maricopa County, the likelihood of a larger outbreak within the facility is speculative at this point. At present, COVID-19 infections in FCI Phoenix are under control. And Dogan's cardiomyopathy and hypertension, standing alone, do not present an extraordinary or compelling reason for modifying her sentence. Both have improved over time and are being monitored and treated. See Opp'n at 13-14. Because the Court cannot make its decision based on the mere possibility of a larger outbreak within the facility, it does not find that Dogan's medical conditions provide extraordinary or compelling reasons for her release.

Neither do Dogan's family circumstances. The family circumstances provision provides, in relevant part, that "the death or incapacitation of the caregiver of the defendant's minor child" constitutes an extraordinary and compelling family circumstance. U.S.S.G. § 1B1.13. Dogan does not meet these criteria. See Mot. at 19-21. Her husband and two adult children are taking care of her two youngest children. Id. And the Court has no reason to believe any of them are presently incapacitated.

Turning to the catchall provision, Subdivision (D) allows

the Director of the BOP to determine that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with the reasons described in subdivision (A) through (C)." U.S.S.G. § 1B1.13(D). In other words, U.S.S.G. § 1B1.13(D) still assumes compassionate release may <u>only</u> be granted "upon motion by the Director of the [BOP]." <u>U.S. v. Rodriguez</u>, 424 F. Supp. 3d 674, -- (N.D. Cal. Nov. 25, 2019) (citation omitted). This Court, however, follows a growing list of district courts within this circuit and others, that have concluded they also have discretion under Subdivision (D). <u>See, e.g.</u>, <u>U.S. v. Cantu</u>, No. 1:05-CR-458-1, 2019 WL 2498923, at *5 (S.D. Tex. June 17,2019); <u>Rodriguez</u>, 424 F.Supp. 3d 674; <u>U.S. v. Chan</u>, 96-cr-00094, 2020 WL 12527895 (N.D. Cal. March 31, 2020); <u>U.S. v. Almontes</u>, No. 3:05-cr-58, 2020 WL 1812713 (D. Conn. April 9, 2020).

The Court finds that Dogan's family circumstances do not serve as extraordinary and compelling reasons for modifying her sentence. Dogan's children are not without caretakers during her incarceration. <u>See</u> Mot. at 21. The Court recognizes that caring for children fulltime, in the midst of a public health crisis, is increasingly challenging. But it is neither unusual nor insurmountable. <u>See</u> <u>United States v. Greenhut</u>, 2019 WL 6218952 (C.D. Cal. Nov. 21, 2019) (defendant's desire to care for his 13-year-old child does not constitute extraordinary circumstances).

### 3. <u>Sentencing Factors</u>

In deciding a motion for compassionate release, a court can neither disregard nor undermine the relevant factors set forth

in 18 U.S.C. Section 3553.  18 U.S.C. § 3582(c)(1)(A)(i); see Dillon, 560 U.S. at 822.  Dogan received a 48-month sentence because she implemented two long-term, large-scale fraud schemes totaling over $2.2 million in intended losses.  See Presentence Investigation Report ¶¶ 6, 8, 11, 14, ECF No. 99.  Dogan has only served six months of this below guidelines sentence.  Considering the scale of the harm caused, a reduction in her sentence at this point would undermine the original sentence's deterrent effect and disregard the possibility that she might cause further harm to the public.  Thus, the sentencing factors also support denying Dogan's request for a reduction in her sentence.

III.  ORDER

For the reasons set forth above, the Court DENIES Defendant's Motion to Reduce Sentence.

IT IS SO ORDERED.

Dated: July 21, 2020

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE